IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MAGDALENA CORNEJO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 12 C 1675 |
| v. | ) | |
| | ) | Jeffrey T. Gilbert |
| MERCY HOSPITAL AND | ) | Magistrate Judge |
| MEDICAL CENTER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff Magdalena Cornejo's ("Plaintiff's") revised Motion to Compel [DE#63] production of documents being withheld from production by Defendant Mercy Hospital and Medical Center ("Defendant") in response to Plaintiff's discovery requests. Defendant asserts the documents are privileged under the Illinois Medical Studies Act, 735 ILCS 5/8-2101 ("Act"), which the Supreme Court of Illinois has said is intended "to ensure that members of the medical profession will effectively engage in self-evaluation of their peers in the interest of advancing the quality of health care." *Roach v. Springfield Clinic*, 157 Ill. 2d 29, 40, 623 N.E.2d 246, 251 (1993). For the reasons discussed below, the Court holds that although some of the documents being withheld by Defendant are privileged, Defendant has not met its burden of showing that the majority of documents it is withholding are protected by the Act. Accordingly, Plaintiff's Motion to Compel is granted in part and denied in part.

## PROCEDURAL HISTORY

Plaintiff alleges, among other things, that Defendant was negligent in caring for Plaintiff and her unborn child while Plaintiff was hospitalized at Mercy Hospital and Medical Center and, as particularly germane to the documents that are the subject of the instant dispute, Defendant

failed to provide competent, capable, qualified physicians and nurses, and to supervise them properly. Complaint [DE#63-1] at ¶¶ 26-27. Plaintiff requested documents from Defendant relevant to these allegations and Defendant objected to producing a large number of the documents requested citing the Act.

Plaintiff first filed a Motion to Compel production of documents Defendant was withholding on September 17, 2013 [DE#37]. Judge Feinerman granted in part and entered and continued in part that earlier motion on September 23, 2013 [DE#39]. He ordered Defendant to produce or log documents being withheld by October 21, 2013, and to submit the withheld documents for *in camera* review. (*Id.*) That date was later extended to November 6, 2013 [DE#46]. The parties then tried to resolve the case themselves, but they were unsuccessful [DE#50].

Judge Feinerman referred Plaintiff's Motion to Compel [DE#37] to the Magistrate Judge then assigned to this case on March 19, 2014. (*Id.*) The case was reassigned to this Magistrate Judge on March 26, 2014 [DE#53]. This Court reviewed the documents being withheld and Defendant's privilege log and found the privilege log to be sorely lacking. At a preliminary hearing on April 30, 2014, the Court ordered Defendant to tender to Plaintiff "a new privilege log with a clearer and more specific description of the documents being withheld, the reason they are being withheld and the date each document was created" [DE#57]. The Court also ordered Defendant to submit to the Court for *in camera* review the revised privilege log and the documents still being withheld, and also to review more carefully the documents it was withholding to determine that they were being withheld in good faith under the Act. (*Id.*)

Defendant subsequently produced to Plaintiff a number of additional documents and tendered a new privilege log, but continued to stand on its assertion of privilege with respect to

2

other documents, prompting Plaintiff to renew her Motion to Compel on June 16, 2014 [DE#63]. Defendant filed a response on July 10, 2014 [DE#70] and Plaintiff filed a reply in support of her renewed Motion to Compel on July 21, 2014 [DE#71].

## DISCUSSION

The Court finds Defendant's privilege log still is woefully deficient and Defendant has not met its burden of showing that most of the documents it is withholding are protected from disclosure by the Act. The Court has reviewed all the documents that Defendant is withholding *in camera*. Even without adequate help from Defendant, the Court can determine from the face of some documents that they are privileged. As for the bulk of the documents that Defendant is withholding, however, Defendant has failed to establish that they come within the protection of the Act and the Court cannot infer from the face of those documents nor from Defendant's conclusory, boilerplate and frequently inaccurate privilege log that they are so protected. Therefore, those documents must be produced to Plaintiff. The Court explains its reasoning below.

The purpose of the Act is "to advance the quality of health care by ensuring that members of the medical profession effectively engage in a peer-review process." *Toth v. Jensen*, 272 Ill. App. 3d 382, 385. 649 N.E.2d 484, 486 (1st Dist. 1995). The Act is premised on the belief that, absent the privilege, "physicians would be reluctant to sit on peer-review committees and engage in frank evaluations of their colleagues." *Roach*, 157 Ill. 2d at 40, 623 N.E.2d at 251 (1993); *Richter v. Diamond*, 108 Ill. 2d 265, 269, 483 N.E.2d 1256, 1258 (1985). Accordingly, the "Act protects documents which arise from the workings of a peer-review committee and which are an integral part, but not the result, of the peer-review process." *Toth*, 272 Ill. App. 3d at 385, 649 N.E.2d at 486 (citation omitted). The Act also "protects against disclosure of the mechanisms of

3

the peer-review process, including information gathering and deliberations leading to the ultimate decision rendered by a peer-review committee." *Anderson v. Rush-Copley Med. Ctr., Inc.*, 385 Ill. App. 3d 167, 174, 894 N.E.2d 827, 834-35 (2d Dist. 2008) (citing *Pietro v. Marriott Senior Living Servs., Inc.*, 348 Ill. App. 3d 541, 549, 810 N.E.2d 217, 224).

The Act does not protect all information used for internal quality control. *Grandi v. Shah*, 261 Ill. App. 3d 551, 557, 633 N.E.2d 894, 899 (2d Dist. 1994). Rather, it protects documents "generated specifically for the use of a peer-review committee." *Chicago Trust Co. v. Cook Cnty. Hosp.*, 298 Ill. App. 3d 396, 402, 698 N.E.2d 641, 646 (4th Dist. 1998). *See also Roach*, 157 Ill. 2d at 39, 623 N.E.2d at 250 ("What the law actually protects is not information of a hospital's medical staff, but information of '*committees* of licensed or accredited hospitals or their medical staffs, including Patient Care Audit Committees, Medical Care Evaluation Committees, Utilization Review Committees, Credential Committees, and Executive Committees . . .'") (emphasis original). Documents created in the ordinary course of business, to weigh potential liability risk, or for later corrective action by hospital staff are not privileged, even if they are later used by a committee in a peer-review process. *Chicago Trust Co.*, 298 Ill. App. 3d at 406, 698 N.E.2d at 649. As the Illinois Supreme Court explained, "If the simple act of furnishing a committee with earlier-acquired information were sufficient to cloak that information with the statutory privilege, a hospital could effectively insulate from disclosure virtually all adverse facts known to its medical staff, with the exception of those matters actually contained in a patient's records." *Roach*, 157 Ill. 2d at 41, 623 N.E.2d at 251.

Further, the Act "does not protect against disclosure of information generated before a peer-review process begins or after it ends." *Ardisana v. Nw. Cmty. Hosp., Inc.*, 342 Ill. App. 3d

4

741, 748, 795 N.E.2d 964, 971 (1993). The hospital committee must be engaged in the peer-review process before the privilege attaches. *Grandi*, 261 Ill. App. 3d at 557, 633 N.E.2d at 899.

Whether the privilege created by the Act applies is a question of law, but whether particular materials are part of a medical study or internal peer review or quality control process is a factual question. *Ardisana*, 342 Ill. App. 3d at 746, 795 N.E.2d 964 at 969. As the party seeking to invoke the privilege, Defendant bears the burden of establishing that the privilege applies as a matter of fact and law, and the burden of any failure to make a complete record necessary for the Court to make those determinations. *Grandi*, 261 Ill. App. 3d at 557, 633 N.E.2d at 898. The party asserting the privilege may support its claim either by submitting the withheld documents for *in camera* inspection or by submitting affidavits setting forth facts sufficient to establish the applicability of the Act to the withheld documents. *Ardisana*, 342 Ill. App. 3d at 748, 795 N.E.2d 964 at 971.

As discussed above, Defendant initially submitted to the Court *in camera* hundreds of documents it claimed were privileged under the Act. The documents were accompanied by a privilege log comprised of largely vague and uninformative descriptions of the withheld documents and boilerplate language parroting the Act. The privilege log offered no context for the documents being withheld and Defendant submitted no other information aside from the documents themselves to provide that context. Under these circumstances, the Court could have ordered Defendant to produce to Plaintiff nearly every document Defendant was withholding. The Court instead gave Defendant a second opportunity to support its claim of privilege by allowing it to submit a more detailed privilege log so that the Court could conduct a meaningful *in camera* inspection of the documents.

Defendant subsequently produced to Plaintiff a number of the documents it was withholding – validating to some extent the Court's initial concern that Defendant had over-designated documents as privileged under the Act – and tendered to Plaintiff and the Court a new privilege log. The Court has reviewed Defendant's new privilege log and the many documents Defendant continues to withhold and finds that, with respect to most of those documents, Defendant still has not met its burden.

Although the Court did not expressly order it to do so, given the Court's concerns expressed this past April [DE#57] Defendant could have submitted with its revised privilege log affidavits or other information necessary to establish the parameters of the peer review or credentialing process that it contends justifies its withholding of documents requested by Plaintiff. That is particularly true if Defendant is going to rely upon another barebones, conclusory, and vague privilege log. Defendant chose not to provide that additional information and, instead, to stand upon its revised privilege log and an *in camera* review of the documents by the Court.

The Court acknowledges that Defendant is entitled to rely on an *in camera* inspection of the documents to meet its burden of proof under the Act. But here, Defendant has provided absolutely no context for the documents it is withholding to assist the Court in determining whether they are protected from disclosure under the Act. Defendant once again makes broad, "kitchen sink" privilege designations of hundreds of documents that do not appear on their face to be privileged. As such, the Court is left to examine itself, and often in a vacuum, each document to determine whether it can tell whether the document was used or created in a manner that is protected by the Act. Absent additional information from Defendant concerning the

context in which many of the documents were created, the Court cannot find most of them privileged.

Most of the withheld documents do not, for example, "self-evidently constitute 'investigative and deliberative materials generated by a hospital committee in formulating its recommendations,'" thus requiring no additional explanation to determine they are protected by the Act. *See Ardisana*, 342 Ill. App. 3d at 748-49, 795 N.E.2d 964 at 971 (citing *Green v. Lake Forest Hosp.*, 335 Ill. App. 3d 134, 138, 781 N.E.2d 658, 662 (2d Dist. 2002)) (finding that minutes from an audit committee and quality improvement committee in which Plaintiff's care was discussed are inherently privileged). Although Defendant represents that "the documents withheld are reports, recommendations, letters of reference, other third party confidential assessments, etc., requested and used by the peer-review committees at Mercy in evaluating staff privileges, appointment, and reappointment to Mercy" (Defendant's Response [DE#70] at 3), the Court's review of the actual documents in question belies this assertion. Instead, Defendant is withholding documents that appear to have been generated in the ordinary course of business, often with no reference to any committee process or review, no confidentiality designation, no evaluation or analysis, and no indication whatsoever that they played any part in a peer-review or comparable process. For example, Defendant is withholding documents such as:

- flyers and attendance sheets for continuing medical education courses (KOS 0225-26, KOS 0255-56);
- a doctor's acknowledgement that he agrees to abide by the hospital's bylaws, rules and regulations (*see, e.g.*, PER 0056);
- an employee's annual performance reviews (*see, e.g.*, SQU 0032-37);
- a resident's standardized test results (*see, e.g.*, NAT 0016, NAT 0104-08);

- computer searches and printouts of doctors' credentials and licenses with no reference to any committee process (*see, e.g.*, KOS 0036, PER 0070);

and other routine documents containing no indication that they are protected in any way by the Act. In short, Defendant once again appears to be withholding documents whose common thread seems to be that they pertain to the medical professionals named in this lawsuit, with no regard to whether they are actually protected by the Act.

It is not clear from the face of the vast majority of documents being withheld by Defendant that they were used or prepared in a manner that is protected by the Act, and Defendant has not otherwise shown that to be the case in its privilege log or with the submission of any other materials. Most of the documents being withheld contain objective factual information untethered to a peer review or credentialing process. The information contained in those documents does not automatically become privileged merely because it might have been placed in front of a credentialing or peer review committee at some point, even if Defendant actually had shown that occurred here, which it has not. *See Roach*, 157 Ill. 2d at 41, 623 N.E.2d at 251 (noting that the Act was never intended to cloak all information eventually presented to a committee with the statutory privilege).

Defendant attempts to assert the privilege by stating repeatedly, in a mantra-like fashion, that the withheld documents were "used in the course of internal quality control and used for granting, limiting or revoking staff privileges." This is a purely conclusory assertion, unverified and bereft of any particularized facts. Further, a document "used in the course of internal quality control and used for granting, limiting or revoking staff privileges" is not automatically privileged under the Act. Rather, documents used for such purposes still must have been generated in a manner protected by the Act in the first place. *See, e.g., Roach*, 157 Ill. 2d at 41,

8

623 N.E.2d at 251 (emphasizing that simply furnishing a committee with non-privileged documents does not then render those documents privileged). The quoted language is used in the Act to describe how otherwise privileged documents may be used, not to describe what documents are covered by the Act in the first place. As discussed above, documents generated in the ordinary course of business and not as part of a peer review or other similar committee process, though incidentally "used in the course of internal quality control and used for granting, limiting or revoking staff privileges," are not necessarily privileged under the Act.

Defendant has presented no information whatsoever concerning the existence of a peer-review committee, let alone who was on the committee, when the committee was formed, what, if any, documents were requested by or put before the committee, or when any peer-review process began and ended. Absent such information in a privilege log or inherent in the documents themselves, or in an affidavit or some other supporting materials, the Court has no way of determining whether these documents were generated for or at the request of a peer-review or other committee within the protection of the Act, or whether they were generated in the ordinary course of business, or whether they were created before or after a peer review process began or ended. In other words, the Court has no way of determining the critical factual question of whether most of the withheld documents were part of an internal quality control process or medical study within the meaning of the Act. The privilege is intended to ensure that members of the medical community engage in candid evaluations of their peers. *Willing v. St. Joseph Hosp.*, 176 Ill. App. 3d 737, 743, 531 N.E.2d 824, 828 (1st Dist. 1988). The Court cannot see how disclosure of most of the documents Defendant is withholding would have any adverse effect on that process, and Defendant has pointed to none.

Defendant's most recent privilege log still is woefully deficient and includes nothing more than cursory descriptions of the withheld documents that, at times, do not even accurately identify the documents they purport to describe. For example, one of the documents being withheld is a letter to Dr. Perego simply reminding him to attend a credentials committee meeting (PER 0217). This is described in the privilege log as a "[c]ommunication from the Mercy Medical Staff Coordinator to Dr. Perego concerning the Credentials Committee meeting, *used in the course of internal quality control and used for granting, limiting or revoking staff privileges.*" (Emphasis added.) A group of documents composed of flyers advertising a morbidity and mortality conference and physician sign-in sheets for continuing medical education credits (KOS 0225-226, KOS 0255-256) is described as "Mortality & Morbidity Review of Dr. Kosanovich." Defendant also is withholding copies of wallet-size, pre-printed cards verifying Nurse Squalls' completion of various courses (SQU 0020) ("Linda Squalls has successfully completed the national cognitive and skills evaluation"). These are described as "[t]hird party *confidential assessments* of Linda Squalls professional competence related to licensing, used in the course of internal quality control and used for granting, limiting or revoking staff privileges." (Emphasis added.)

There is nothing about any of these documents, as far as the Court can tell, that would bring them within the purview of the Act. To the contrary, Defendants' descriptions of these documents appear to be misleading and inaccurate. Indeed, based on Defendant's misleading description of the mortality and morbidity conference flyers and attendance sheets, Plaintiff conceded those documents may be privileged, which they clearly are not based upon Defendant's submissions. Plaintiff's Motion [DE#63] at 10.

In addition, Defendant has withheld a number of documents, 34 pages in all but lumped together in one privilege log entry, described as "[r]eports and information collected from Loyola University, Alexian Brothers Medical Center, and Mercy, concerning Dr. Nataprawira's performance and credentials, used in the course of internal quality control and used for granting, limiting or revoking staff privileges." (NAT 0074-84, 0086-108.) These documents actually include Dr. Nataprawira's scheduled duty hours for various months, lists of cases she worked on, and an application for a research study entitled "Pilot – Low serum level of vitamin D are associated with pre-eclampsia in pregnancy." Defendant's privilege log is once again inaccurate and misleading. These documents either are not privileged under the Act or are not privileged for the reason Defendant gives in its privilege log.

Defendant's privilege log does include copies of letters to a Dr. Picken, who is identified elsewhere (though not by Defendant in its privilege log) as chairman of the Mercy Hospital Credentials Committee, verifying the professional credentials and work record of doctors who were employed at hospitals other than Mercy. Similar letters and materials on Defendant's log, addressed to people other than Dr. Picken at Mercy Hospital, also appear to have been generated as part of a credentialing process at the request of the Credentials Committee. Giving Defendant the benefit of the doubt, the Court finds these documents are protected by the Act because they apparently were generated as part of an information gathering process at the request of a credentials committee and are materials typically used by such a committee in making its decisions.

Defendant has now had two opportunities to create a record before the Court sufficient to meet its burden of showing that the documents it is withholding fall within the purview of the Act. Defendant bears the burden of establishing that the privilege applies and, as part of that

11

burden, Defendant is required to make a complete record to support its assertion. *See Grandi*, 261 Ill. App. 3d at 557, 633 N.E.2d at 898 (holding that the party seeking to invoke the privilege bears the burden of failing to create a complete record). In its April 30, 2014 Order [DE#57], the Court informed Defendant that it could not engage in effective review of the withheld documents where the privilege log consists solely of "boilerplate descriptions . . . and language that parrots the Medical Studies Act" and Defendant offers "little real information concerning the documents being withheld and the basis upon which they are being withheld." [DE#57]. Nevertheless, Defendant continues to rest mostly on broad, conclusory, boilerplate assertions devoid of any factual context to establish the Act applies.

While, as noted above, the Court did not order Defendant to submit an affidavit or other evidence in addition to a revised privilege log to establish the foundation for its assertion of privilege consistent with the Act, it did require "a clearer and more specific description of the documents being withheld [and] the reason they are being withheld . . . ." (*Id.*) Defendant was on notice that it needed to do more than simply parrot the language of the Act to establish that a document is protected from disclosure. Having failed to do so on two occasions, the reasonable inference is that Defendant cannot do so. Alternatively, Defendant may have decided it is not worth the trouble to support its claims of privilege with the kind of showing that Illinois courts have found to be necessary when a hospital invokes the Act to shield documents from production. In either case, however, the result is the same.

## CONCLUSION

Some of the documents being withheld by Defendant, as discussed above, establish on their face that they fall within the purview of the Act and, therefore, Defendant need not produce

them to Plaintiff.[1] Plaintiff also acknowledges in her Motion to Compel [DE#63] that she is not seeking certain documents dated 2012 and later, so Defendant need not produce those documents. The documents Defendant need not produce to Plaintiff for these reasons are identified by Bates number below:

- PER 0005-08, 0064-65, 0067-69, 0071-73, 0080-81, 0083-99, 0104-06, 0108-10, 0113-15, 0128-29, 0133, 0158, 207-11, 0214;

- KOS 0007, 0032-35, 0037-61, 0074-80, 0086-102, 0127-33, 0139, 0170-71, 0259, 0264, 0272-73; and

- NAT 0001-04, 0036, 0052-64, 0465-529, 0532-35, 0544-86, 0588-93, 0598-99, 0604-05, 0683-735.

None of the other documents listed on Defendant's privilege log appear to be protected by the Act based upon Defendant's submissions for the reasons discussed herein. Accordingly, Defendant shall produce to Plaintiff all the documents that are the subject of Plaintiff's renewed Motion to Compel [DE#63], other than those listed by Bates number above, within fourteen (14) days of the date of this Memorandum Opinion and Order.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: September 15, 2014

---

[1] These documents include, for example, in addition to the credentials letters discussed above, peer evaluations of a doctor's competence, completed at the request of a credentialing committee and entitled "Recommendation of Candidate for Appointment to the Medical Staff/Faculty" (*see, e.g.*, KOS 0034-35, PER 0086-87); physician reappointment evaluations and recommendations, completed as part of the credentialing process and signed by Mercy Hospital department chairpersons (*see, e.g.*, KOS 0170-71, PER 0128-29); and minutes from meetings of a Resident Remediation Committee (NAT 0532-35).